UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DANIEL JOLICOEUR, )
 )
 Plaintiff, )
 )
v. ) No. 1:09-cv-389-JAW
 )
SOCIAL SECURITY ADMINISTATION )
COMMISSIONER, )
 )
 Defendant )

**REPORT AND RECOMMENDED DECISION**

The Social Security Commissioner found that Daniel Jolicoeur, a middle-aged man with long-term degenerative disk disease, left ulnar neuropathy and related pain, but also a long-term history of post-onset skilled work, had sufficient residual functional capacity to perform his most recent past relevant work and two more categories of more remote past relevant work and denied Jolicoeur's application for disability benefits under Title II of the Social Security Act. Jolicoeur commenced this civil action for judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), alleging errors at Steps 2 and 4 of the sequential evaluation process and an absence of substantial evidence in support of the Administrative Law Judge's related findings. I recommend that the Court affirm.

**Standard of Review**

The standard of review is whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). "The

ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion of Plaintiff's Statement of Errors

The decision under review is the April 7, 2009, decision of the Administrative Law Judge. The Administrative Law Judge found, at Step 2, that Jolicoeur has severe impairments in the form of degenerative disk disease of the lumbar spine (mild disc desiccation and bulging at L3-4 level and minimal facet joint changes at the L5-S1 level) and left ulnar neuropathy. These limitations cause associated low back, testicular, and lower extremity pain, as well as pain, numbness and tingling in left upper arm. (Finding 3, R. 9-10.) The Administrative Law Judge found other health issues experienced by Jolicoeur (anxiety, depression, obstructive sleep apnea, and cardiovascular disease) are not severe impairments for purposes of Step 2. (R. 10-11.) According to Jolicoeur, the Administrative Law Judge erred when he found that depression is not a severe impairment and that no other non-exertional, mental limitations impede his return to work. (Statement of Errors at 7-11, Doc. No. 13.) Jolicoeur points to long-term treatment with anti-depressants and a Mental Residual Functional Capacity Questionnaire prepared by Dr. John Keefe, Ph.D, his treating psychologist, who opines that depression and personality disorder significantly increase the limitations Jolicoeur experiences as a result of chronic pain. (Ex. 17F, R. 406-407.) Keefe's Questionnaire was prepared December 18, 2008. (R. 408.) Jolicoeur says that the competing assessments performed by DDS consulting physicians (Gates, Ph.D., Apr. 2008, Ex. 4F, and Hoch, Ph.D., Aug. 2008, Ex. 11F) are outdated and, consequently, unreliable.

At Step 3, the Administrative Law Judge found that Jolicoeur fails to meet either Listing 1.04, because he is able to ambulate effectively, or Listing 11.14, because he does not experience

2

significant and persistent disorganization of motor function in *two* extremities. (Finding 4, R. 11.) The Step 3 finding is not challenged.

At Step 4, the Administrative Law Judge found that Jolicoeur has a residual functional capacity (RFC) to perform light work (Finding 5, R. 11), including his past relevant work as a research laboratory coordinator, a vice president of operations, and a computer programmer (Finding 6, R. 16.) Jolicoeur alleges error, citing the Physical RFC Assessment (Ex. 16F) of his long-term treating physician, Vincent Michaud, M.D., of Husson Family Medicine, and the Mental RFC Questionnaire completed by Dr. Keefe. (Statement of Errors at 12-14.)

**A.    Step 2**

At Step 2, the Commissioner must consider the medical severity of a claimant's impairments and it is the claimant's burden to prove the existence of a severe medically determinable physical or mental impairment or severe combination of impairments that meets the durational requirement of the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). To meet the durational requirement, the impairment or combination of impairments must be expected to result in death or have lasted or be expected to last for a continuous period of at least 12 months. Id. § 404.1509. The claimant's burden at Step 2 is a *de minimis* burden, designed to do no more than screen out groundless claims. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination at Step 2 that the impairment is not severe only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." Id. at 1124 (quoting Social Security Ruling 85-28). At Step 2, only medical evidence may be used to

3

support a finding that an impairment is severe. 20 C.F.R. § 416.928; Social Security Ruling 85-28.

Jolicoeur argues that the Administrative Law Judge erred at Step 2 because the Administrative Law Judge failed to include any mental health limitations among Jolicoeur's severe impairments. Jolicoeur cites the Mental RFC Questionnaire submitted by Psychologist John Keefe, with whom he reports consulting beginning in August 2008. (Statement of Errors at 3.) I assume for purposes of Step 2 that Dr. Keefe's opinion and his review of Jolicoeur's anti-depressant treatment history is sufficient to meet the limited burden posed at Step 2 of the sequential evaluation process. Assuming error at this stage does not call for remand. Even if an error has been made at Step 2 in failing to find a particular impairment to be severe, that error is harmless unless the plaintiff can demonstrate that inclusion of the impairment would have changed the outcome of the plaintiff's claim. Bolduc v. Astrue, No. 09-cv-220-B-W, 2010 WL 276280 (D. Me. Jan. 19, 2010), at *4 n.3 (and cases cited therein).

**B.     Step 4**

At Step 4 of the sequential evaluation process the Commissioner evaluates the claimant's residual functional capacity (RFC), as well as the claimant's past relevant work. If the claimant's RFC is compatible with his or her past relevant work, the claimant will be found "not disabled." 20 C.F.R. § 404.1520(a)(4)(iv). At Step 4 the burden of proof rests with the claimant to demonstrate that his residual functional capacity does not enable him to engage in his past relevant work. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. § 404.1520(f).

The Administrative Law Judge found that Jolicoeur maintains a residual functional capacity to perform light work, with an ability to lift and carry ten pounds frequently and twenty pounds occasionally, and to sit and stand or walk for 6 hours in an 8-hour work day with some

non-exertional limitations related to balancing, crouching, and so forth, that do not preclude his past relevant work. This finding depends in part on two rounds of assessments by DDS consulting physicians, the first round in April 2008 (Exs. 3F & 4F) and the second in August 2008 (Exs. 11F & 12F) and in part on credibility findings about the intensity of pain, anxiety, and other symptoms allegedly experienced by Jolicoeur. Jolicoeur argues that these are trumped by more recent assessments by his own care providers in November and December 2008 (Exs. 16F & 17F).

Jolicoeur relies in part on the Physical RFC Questionnaire prepared by his treating physician, Dr. Michaud, on Nov. 17, 2008. Dr. Michaud opines that Jolicoeur is incapable of even low stress jobs, that constant pain results in poor function and poor cognition, that Jolicoeur can stand for only 15 minutes, that he can sit for only 45 minutes, that he cannot do either activity for 2 hours or more in an 8-hour workday, that he would require 3 or 4 unscheduled breaks per hour, including naps for up to one hour, that he can never carry 10 pounds or more in a competitive work situation, and that he can only use his arms for 10 percent and his hands for 5 percent of the workday. (R. 401-403.) Jolicoeur also relies on the Mental RFC Questionnaire completed by his psychiatrist, Dr. Keefe, on December 18, 2008. Dr. Keefe completed the questionnaire after 11 weekly sessions with Jolicoeur starting in August 2008. He reports that Jolicoeur is cognitively impaired by pain medications, has a poor prognosis, suffers from major depression and a paranoid personality disorder that increase his physical limitations, has a most recent GAF of 45, and is "unable to meet competitive standards" or is "not useful" with respect to a number of mental abilities and aptitudes necessary for unskilled, semiskilled, or skilled work. (R. 404-407.) Dr. Keefe explains that Jolicoeur's personality disorder confuses him interpersonally and makes productive interpersonal relations very difficult, that this becomes

more severe with stress, and that depression interferes with Jolicoeur's memory. (R. 407.) He also reports that depression has been shown to increase a person's subjective pain experience. (Id.) In Dr. Keefe's view, Jolicoeur's condition would result in work absences on more than 4 days per month. (Id.)

By comparison, Dr. Edward Harshman, MD, performed a consultative physical examination in April 2008 and concluded only that Jolicoeur should not engage in any heavy lifting.[1] (R. 271.) Subsequently, two physical RFC assessments were performed by consultants who reviewed Jolicoeur's medical history. The first consultant, Paulette Warren, stated in May 2008 that Jolicoeur could reasonably be expected to engage in exertional activity at a light level, with an ability to sit and stand and/or walk for about 6 hours in an 8-hour workday. (Ex. 5F, R. 278.) With respect to the left ulnar neuropathy, Warren assessed that Jolicoeur could not perform constant reaching or handling with his left hand. (R. 280.) In August 2008, Dr. Donald Trumbull, MD, completed a second physical RFC assessment. He assessed that Jolicoeur's physical residual capacity remained largely unchanged, except that he increased the degree of limitation in Jolicoeur's upper extremities to preclude forceful pushing or pulling and no forceful use of left arm. (Ex. 12F, R. 373.) Dr. Trumbull represented that the RFC is reflective of objective medical evidence and allows some credit for pain. (R. 377.) His assessment was based on records compiled through July 22, 2008, including a May MRI of the lumbar spine characterized as negative for significant findings (Ex. 8F, R. 309; Ex. 9F, R. 314), a specialist assessment in June of the ulnar nerve condition as evincing mild entrapment (Ex. 8F, R. 302), and a July 2008 report from Dr. Michaud describing a history of "losing ability to ambulate with

---

[1] Dr. Harshman acknowledges existence of pain in his report. He says the current diagnosis for the pain is a pinched nerve root at the spinal column. (R. 270.)

loss of muscle mass,"² some muscle twitching (fasciculation) in legs, inability to complete deep knee bend, poor concentration, some mild cognitive issues, and fatigue following simple tasks (Ex. 9F, R. 314). Psychiatric reviews performed in May and August 2008, by Lewis Lester, Ph.D., and Scott Hoch, Ph.D., respectively, consistently assessed non-severe impairments spanning the affective, depressive, and anxiety categories, imposing only mild limitation related to activities of daily living, social functioning, and concentration, persistence, and pace, without any episode of decompensation, and a GAF of 65. (Ex. 6F, R. 285, 288, 290, 295, 297; Ex. 11F, R. 358, 361, 368, 370.)

The several opinions expressed by the consulting physicians provide substantial evidence in support of a finding that Jolicoeur's mental and physical impairments are not disabling individually or in combination. The more recent physical and mental RFC assessments provide substantial evidence in support of the Administrative Law Judge's more particularized RFC finding. Jolicoeur argues that these opinions are trumped by the assessments provided by his treating physicians. As for mental limitations, Jolicoeur says that Dr. Keefe's assessment would clearly rule out past relevant work at a high skill level and that Dr. Keefe's opinion is entitled to more weight than any consulting physician's opinion based on a mere file review, particularly as Dr. Keefe's opinion follows an 11-week course of therapy and conforms with diagnostic techniques considered reliable by practitioners in the field. (Statement of Errors at 3-7.) Jolicoeur also cites his own statements recorded in Dr. Keefe's treatment notes as proof of a severe mental limitation and medical records showing that anxiety and depression have coexisted and persisted as conditions diagnosed in his medical records since October 2007. (Id. at 7, 9-11.)

---

² The June 2008 neurological consultation that precedes this note by Dr. Michaud indicates an ability to walk tandem without significant difficulty. (R. 310.)

I conclude that the Administrative Law Judge's mental RFC assessment is supported by substantial evidence and is not precluded by Dr. Keefe's opinions following a course of therapy undertaken late in the administrative process. An administrative law judge is permitted to rely on the RFC assessment of a consulting physician over the competing assessment of a treating physician, provided the consulting physician's assessment is consistent with the objective medical evidence and the administrative law judge provides reasons for rejecting the treating source's assessment. Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the ALJ], not for the doctors or for the courts."); 20 C.F.R. § 404.1527(d)(2) (reserving "controlling weight" for those treating source opinions that are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record" and articulating factors that govern the amount of weight assigned to treating source opinions); SSR 96-8p (describing evidence considered for purposes of RFC determination). In this case the Administrative Law Judge provided a reliable explanation for why he discounted Dr. Keefe's evaluation. Among the Administrative Law Judge's reasons are that Jolicoeur had an 18-month hiatus in psychotherapy following what appeared to be a successful period of counseling, the appearance that Dr. Keefe was merely repeating subjective allegations, a seemingly false description by Jolicoeur of the results of past counseling (R. 10), the sudden, unexplained appearance of paranoid personality disorder allegations (R. 11), the absence any confirmed triggering event captured in the treatment notes between February 2007 and August 2008 (R. 14-15), and an assessment so severe that a triggering event would be expected or even referral for inpatient hospitalization or intensive outpatient therapy (R. 15). This may not be the conclusion that the Court would reach upon *de*

*novo* review, but it is based on factors that a reasonable mind might well regard as reliable and is undergirded by additional substantial evidence in the form of consultative expert assessments.

As for physical restrictions, Jolicoeur says that Dr. Michaud's assessment would rule out even light sedentary work and, more to the point, that what Dr. Michaud opines about him is entitled to controlling weight because Dr. Michaud is his long-term treating physician. (Statement of Errors at 12-14.) As stated with respect to Dr. Keefe's opinion, an administrative law judge simply is not compelled to accept the RFC opinion of a treating physician when there is other substantial evidence in the record that conflicts with it. The applicable regulation reserves controlling weight to those treating source opinions that are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). When it comes to pain, emotional or psychic, medically acceptable clinical and laboratory diagnostic techniques may reflect that a patient's allegations of subjective pain are reliable, but a patient's subjective pain experience is not as often "well-supported" by clinical or laboratory evidence. In this case, for example, there is objective evidence of nerve involvement, but no objective medical evidence of the degree of Jolicoeur's subjective experience of pain. In reviewing the record for substantial evidence, the Court must keep in mind that "issues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the [Commissioner]." Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965). The administrative law judge has the unenviable duty to make the credibility determination, 20 C.F.R. § 404.1529(a), (c)(1), (c)(4), and in doing so he or she has leeway to consider what the "entire case record" reveals and what reasonable inferences it supports. Id.; see also SSR 96-7p ("[W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other

symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."). The Court cannot overturn that finding just because it might draw different inferences from the record. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

    In this case the Administrative Law Judge based his physical RFC findings on substantial evidence in the form of opinions expressed by consulting physicians and record evidence that called into question both Jolicoeur's severe assessment of his pain-related restrictions and Dr. Michaud's reliance on Jolicoeur's subjective complaints to frame his more severe physical RFC opinion. These factors included mild radiological and clinical findings related to nerve impingement and range of motion for both the back and left elbow (R. 12-13), lack of referral for surgical intervention, a report of pain reduction on medication without documentation of significant side effects (R. 13), Jolicoeur's appearance at the hearing with a cane despite any medical evidence of need for a cane or other assistive device, use of a circular saw to cut wood less than one week prior to his alleged onset date, a report of no pain on January 25, 2008, discontinuance of substantial gainful activity for reasons unrelated to disability, and a range of activities of daily living out of proportion with allegations of disabling pain, including various household chores and walking as a form of exercise (R. 14). Although the Administrative Law Judge found that Jolicoeur suffers from impairments that would reasonably be expected to result in his alleged symptoms of pain, the Administrative Law Judge found that the record as a whole does not substantiate Jolicoeur's allegation and Dr. Michaud's finding of disabling pain inconsistent with any residual functional capacity. In making this determination, the Administrative Law Judge relied on substantial evidence supplied by consulting experts and on

credibility findings that a reasonable person might make based on the record as a whole, even if that record by no means compels the finding he reached.

The final Step 4 finding concerns Jolicoeur's ability to perform his past relevant work. Jolicoeur maintains that the Administrative Law Judge erred in finding that past relevant work was not precluded by physical and mental deterioration subsequent to Jolicoeur's departure from substantial gainful employment. At this stage, the commissioner must make findings of the claimant's residual functional capacity and the physical and mental demands of past work and determine whether the plaintiff's residual functional capacity would permit performance of that work. 20 C.F.R. § 404.1520(f); SSR 82-62. In the main, Jolicoeur's challenge is that the Administrative Law Judge relied on a faulty RFC finding. (Statement of Errors at 15.) I have already addressed that issue. Otherwise, Jolicoeur argues that the Administrative Law Judge's hypothetical proposal to the vocational expert was faulty because he failed to relate to the vocational expert that there was any mental limitation whatsoever, which he says would be relevant to one's ability to perform highly skilled work. Jolicoeur argues, by extension, that the Administrative Law Judge erred because he failed to explicitly discuss the mental demands of Jolicoeur's past work in his sixth finding (R. 16). (Statement of Errors at 16.)

A reading of the entirety of the Administrative Law Judge's decision explains why the Administrative Law Judge did not include any mental limitations in his RFC finding. The consulting psychiatrists assessed only mild limitations and found no evidence of decompensation. These ratings indicate a non-severe impairment. 20 C.F.R. §§ 404.1520a(d)(1), 404.1521. Where mental limitations are found to be non-severe and have not made it into the Administrative Law Judge's RFC finding, I fail to see why it would be reversible error for the Administrative Law Judge to refrain from discussing the mental demands of the

11

claimant's past work. At most this argument suggests a technical error, which places the onus on the plaintiff to demonstrate something more than harmless error on appeal. At the hearing, counsel refined the Administrative Law Judge's hypothetical question to the vocational expert, but did so only with respect to physical limitations. (R. 54-55.) Counsel did not ask whether mild mental limitations in all three areas (activities of daily living, social functioning, and concentration, persistence or pace) would prevent the skilled work in question. At Step 4, the burden of proof remains with the claimant/plaintiff. Yuckert, 482 U.S. at 146 n.5; 20 C.F.R. § 404.1520(f). Given this presentation, I recommend that the Court affirm.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Administrative Law Judge's decision and enter judgment in favor of the Commissioner.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

August 5, 2010